# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## ATAVIS CORTEZ CUNNINGHAM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. 08-CR-227     R. Lee Moore, Judge**

---

**No. W2010-01405-CCA-R3-PC - Filed July 7, 2011**

---

Following his conviction by a Dyer County Circuit Court jury of one count of aggravated assault for which he received a sentence of eight years' incarceration as a Range II, multiple offender, the petitioner, Atavis Cortez Cunningham, filed a timely petition for post-conviction relief based upon allegations of ineffective assistance of counsel and an unconstitutional jury composition.  The Dyer County Circuit Court denied relief following an evidentiary hearing.  On appeal, the petitioner contends that the post-conviction court erred by denying relief.  Discerning no error, we affirm the order of the circuit court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Danny H. Goodman, Tiptonville, Tennessee, for the appellant, Atavis Cortez Cunningham.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner's conviction arose from the April 12, 2008 assault of the victim, Philip Graff.  As taken from the facts of our direct appeal opinion, the petitioner telephoned the victim and asked for a ride.  The petitioner, however, told witnesses that he actually planned to "steal the victim's laptop computer and then 'beat his ass'" in retaliation for the victim's supposedly telling the police that the defendant "'had a failure to appear.'"  *State v. Atavis Cortez Cunningham*, No. W2009-00744-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Jackson, Sept. 16, 2009).  Witnesses testified that the petitioner punched and kicked

the victim repeatedly in the ribs and head. *Id*. at 2-3. At some point, the victim was able to drive himself to a gas station where he passed out. *Id*. He was taken by ambulance to a local hospital and then transported by ambulance to the Regional Medical Center in Memphis where he required surgery to repair injuries to his jaw. *Id*.

On direct appeal, the petitioner argued that his jury was unconstitutionally empaneled and that the evidence was insufficient to support his conviction. We concluded that the defendant failed to show a systematic exclusion of African-American jurors from the venire and that the evidence was sufficient to support his conviction of aggravated assault. Accordingly, we affirmed the defendant's conviction. *Id*. at 8.

On February 19, 2010, the petitioner filed a pro se petition for post-conviction relief alleging that his jury was unconstitutionally empaneled and that his trial counsel committed ineffective assistance by failing to (1) maintain contact and develop a theory of defense with the petitioner, (2) investigate the case and witnesses, (3) present evidence – specifically the clothing worn at the time of his arrest, (4) secure a plea agreement, and (5) raise an objection to the composition of the jury. Following the appointment of counsel and amendment of the petition, the post-conviction court held an evidentiary hearing on May 3, 2010.

The petitioner testified at the evidentiary hearing that only one African American served on his jury and that he could not recall how many African Americans were included in the venire. He said that he and trial counsel did not have any discussions concerning the racial composition of the venire or jury, and he acknowledged that he only became concerned about the racial composition following his conviction. He opined that "a mixed jury, I feel the chances would've been a little better and the people would've been a little more open" had there been a fair racial composition in the venire.

The petitioner also testified that trial counsel met with him only two or three times between her appointment at his arraignment in general sessions court and his trial several weeks later.[1] He recalled that the State initially offered him a sentence of three years' incarceration in exchange for his guilty plea, but he rejected the offer. He said that trial counsel presented him with a second plea offer from the State on the day before trial. This time, the State offered the petitioner a six-year suspended sentence in exchange for his guilty plea, and the petitioner told counsel that he wanted to "take it." The petitioner recalled, however, that the trial court's policy of not taking guilty pleas on the eve of trial precluded

---

[1] Trial counsel testified that, at his arraignment, the petitioner requested a speedy trial "before [she] could get him to be quiet." Accordingly, the petitioner's case progressed from preliminary hearing to indictment and trial rather quickly.

the plea agreement.

The petitioner also testified that he instructed trial counsel to present as evidence at trial the clothing he was wearing when arrested to show that there was no blood on his clothing and, thus, he could not have been involved in the attack on the victim. He said that trial counsel never responded to his request to present this evidence. He claimed that trial counsel did not review the preliminary hearing testimony of the State's witnesses so that counsel might impeach the witnesses with discrepancies in their testimonies. He also claimed that, after alleging ineffective assistance of counsel in a pro se pretrial motion, trial counsel told him "not to call her office, at all." The petitioner said that he kept calling, but trial counsel ignored his telephone calls.

On cross-examination, the petitioner conceded that the first plea offer included a notice that if the petitioner rejected that offer, the State would seek to have him sentenced as a multiple offender and request consecutive sentencing. The petitioner ultimately received a Range II sentence to be served concurrently with a previously imposed sentence.

Trial counsel testified that she had been licensed since 1995. Upon her appointment at arraignment, trial counsel reviewed the arrest warrant and police report. She recalled conducting a "lengthy preliminary hearing" during which she cross-examined witnesses and presented some witnesses on the petitioner's behalf. She interviewed all eyewitnesses and two police officers involved in the investigation of the petitioner's case in preparation for trial.

Trial counsel testified that she was well aware of all the witness testimony because she had typed the preliminary hearing transcript herself and utilized it on cross-examination to impeach several witnesses. She recalled, however, that none of the witnesses testified in any materially contradictory manner and that "all [of the witnesses] indicated that [the petitioner] had kicked or stomped [the victim]." She reiterated that no eyewitness exculpated the petitioner and that "basically, [she] was just doing the best [she] could with [the petitioner], because he was very unreasonable and wouldn't listen to [her]." At the petitioner's behest, trial counsel called one witness she described as "probably the most damaging witness" to testify at trial.

Trial counsel admitted that she refused to present as evidence the clothing worn by the petitioner at his arrest. She explained that the petitioner asked that she present the clothing on the day before trial and that the clothing had not been tested for the presence of any blood. Therefore, trial counsel did not know if the clothing, in fact, contained blood stains. Furthermore, she did not know whether the clothing was actually the same as that worn by the petitioner during the incident. Accordingly, she testified that it would have been

"malpractice" for her to present the clothing as evidence at trial. Trial counsel also recalled that the petitioner insisted upon testifying, against her advice, but he then refused to testify when she called him to the stand.

Trial counsel testified that the petitioner telephoned her office four to five times a day and that she spent no less than one hour a week visiting the petitioner at the jail throughout her representation. She said that the petitioner rejected the first plea offer because he claimed that "he was totally innocent." She recalled that the petitioner "didn't want to go to jail . . . [and] kept whining about it" so she solicited the second plea offer on the eve of trial, although she was doubtful the trial court would accept it.

The post-conviction court commented that the petitioner had presented a "good attitude" at the evidentiary hearing. By comparison, the post-conviction court noted that the petitioner "always [had] a bad attitude" at trial. The court recalled that "everything [the petitioner was] doing back then was a demand," explaining why the case progressed to trial so quickly. The court noted that it was obvious that the petitioner was "calling the shots" at the trial stage.

The post-conviction court then found that there were no material differences between the preliminary hearing testimony and trial testimony of the State's witnesses which suggested any deficient performance by trial counsel's cross-examination of the witnesses. The court also found that the jury composition issue had been previously determined and that, furthermore, counsel had not committed ineffective assistance in handling issues related to the jury because the venire in Dyer County was drawn from a fair cross-section of the community. The court found that trial counsel did not perform deficiently by not presenting the clothing as evidence and that the petitioner failed to present proof at the evidentiary hearing that the clothing would have exonerated him in any way. The court found that the petitioner was opposed to accepting any plea offer and that all of the witnesses "testified clearly that [the petitioner] kicked and stomped . . . this boy's head . . . [and] that [the petitioner] did just exactly what [he] was charged with doing." As such, the court ruled that the petitioner failed to show any prejudice stemming from the alleged deficient performance of counsel. Therefore, the post-conviction court denied relief.

The petitioner filed a timely notice of appeal from the post-conviction court's order denying relief. This case is properly before this court. On appeal, the petitioner contends that his conviction is the result of the ineffective assistance of counsel.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the

-4-

Constitution of the United States." T.C.A. § 40-30-103 (2006). The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6, S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Initially, we note that the post-conviction court correctly ruled that any free-standing claim concerning the composition of the jury was previously determined on direct appeal. *See* T.C.A. § 40-30-106(h). That being said, we conclude that the record in this case

fully supports the findings of fact and conclusions of law of the post-conviction court. The petitioner failed to show any deficient performance by counsel's communication with the petitioner, investigation of the case, or presentation of the evidence. To the extent that the petitioner claims that counsel failed to call certain witnesses or present evidence – specifically the clothing – the petitioner also failed to present any evidence in support of these claims at the evidentiary hearing. Accordingly, the petitioner failed to establish his claims related to the presentation of evidence or witnesses. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (holding that a post-conviction petitioner generally fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness to the post-conviction court because a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial). Likewise, the petitioner failed to present any proof to establish any claim related to trial counsel's handling of issues concerning the composition of the jury in his case. Therefore, the petitioner failed to establish his entitlement to post-conviction relief. Accordingly, the order of the post-conviction court is affirmed.

*Conclusion*

The record supports the findings of fact and conclusions of law of the post-conviction court. Accordingly, we affirm the post-conviction court's order denying relief.

_____
JAMES CURWOOD WITT, JR., JUDGE